## Sonnen v. Reading Company

738

*Allen H. Krause*, for plaintiffs.

*H. Rank Bickel, Jr.*, for defendant.

GATES, P. J., July 24, 1967.—And now, July 24, 1967, after hearing, upon consideration of the requests filed by the parties, the chancellor makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiffs Paul Sonnen and Annie Sonnen are individuals, husband and wife, who reside in Millcreek Township, Lebanon County, Pa.

2. Defendant is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal office in Philadelphia, Pa.

3. Defendant is engaged in operating a railroad in the Commonwealth of Pennsylvania and elsewhere.

4. Defendant is successor to the Philadelphia and Reading Railroad Company.

5. The Philadelphia and Reading Railroad Company absorbed and merged with the Lebanon Valley Railroad Company on December 8, 1937.

6. Plaintiffs are the owners of two adjoining farms in Millcreek Township, Lebanon County, Pa., which we shall refer to as Farm No. 1 and Farm No. 2.

7. Farm No. 1 was acquired by plaintiffs in 1924, and it contains approximately 140 acres and lies adjacent to Farm No. 2 in Millcreek Township and immediately to the east thereof.

8. Farm No. 2 was acquired by plaintiffs in 1939 and contains approximately 90 acres lying adjacent to and immediately west of Farm No. 1 in the same township.

9. Plaintiffs resided on Farm No. 1 until 1940, at which time they moved to Farm No. 2, where they now reside.

10. On Farm No. 1, there is an underpass beneath defendant's right-of-way which crosses the property, which underpass we shall identify as bridge no. 17/92.

11. On Farm No. 2, there is an overhead bridge which crosses defendant's right of way and which we shall identify as bridge no. 18/22.

12. In 1940, plaintiffs leased the barn and land of Farm No. 2 to their son, as a tenant farmer, for an annual rental of $2,400.

13. Plaintiffs presently reside in the dwelling on Farm No. 2.

14. In 1945, plaintiffs rented Farm No. 1 to their son, who has resided on that property since that date and who farms both properties.

15. Prior to 1917, defendant acquired a right-of-way across Farm No. 1 and Farm No. 2.

16. Defendant's right of way across Farm No. 2 bisects the farm near its northern end, separating the improvements and approximately nine acres of the farm from the remaining acreage.

17. The right-of-way owned by defendant passing through and bisecting Farm No. 2 makes a cut of varying depth through said farm and, at its deepest, is approximately 20 feet.

18. Defendant or its predecessors constructed bridge no. 18/22 on Farm No. 2 across the right-of-way on plaintiffs' property, which bridge is located immediately to the rear of the barn, and the bridge provides convenient access to the remaining farm acreage.

19. Defendant succeeded to all the assets and assumed all the liabilities and contractual obligations of its predecessors, the Philadelphia and Reading

Railroad Company and the Lebanon Valley Railroad Company.

20. Defendant or its predecessors has maintained and repaired the overhead bridge no. 18/22 since at least 1917.

21. Beginning in 1961, defendant notified plaintiffs that unless they were willing to assume the obligation of repairing and maintaining the bridge, they would barricade the approaches to it.

22. Approximately one year before this suit was commenced, defendant erected barriers to close off bridge no. 18/22 from use by plaintiffs, which barriers were removed by plaintiffs.

23. On or about February of 1965, defendant requested plaintiffs' permission to raise the bridge no. 18/22 to permit oversized cargo to pass underneath the bridge, which permission was granted by plaintiffs upon the condition that the bridge would be lowered after the cargo had passed.

24. Since that time, bridge no. 18/22 has not been lowered and remains approximately one foot above the previous level, although plaintiffs have frequently requested defendant to lower the bridge.

25. By reason of the raising of the bridge, plaintiffs have been unable to move farm equipment, vehicles, implements and cattle across bridge no. 18/22 to the remaining fields of said farm.

26. The size of the bridge and its position are such that it would be impossible for plaintiffs to replace bridge no. 18/22 into a lowered position.

27. In order for plaintiffs or anyone else to lower the bridge it would be necessary for them to go upon the right-of-way of the defendant corporation and thus constitute an unlawful trespass.

28. Due to the raising of the bridge by defendant, plaintiffs' tenant must now take a circuitous route or routes to go from the north side of defendant's right-

of-way to the fields on the south side, said routes varying in distance from approximately 1,500 feet up to a mile and a half in order to use and enjoy the field on the south side of the railroad on Farm No. 2.

29. As a consequence of the raising of the bridge and defendants' failure to lower it as agreed, plaintiffs have suffered consequential damages in the amount of $1,156.

30. Plaintiffs have access to their lands on the south side of the right-of-way of defendant, without crossing defendant's tracks, by a bridge located on Farm No. 1 to the east of the private bridge no. 18/22, which bridge is identified as bridge no. 17/92.

31. Plaintiffs have access to their land on the south side of the right-of-way of defendant at a point approximately 720 feet east of the bridge no. 18/22, at a place where township route 640 crosses the right of way of defendant at a grade.

### DISCUSSION

Defendant contends that by reason of the Act of February 19, 1849, P. L. 79, sec. 12, 67 PS §381, defendant was justified in barricading bridge no. 18/22, and was under no legal obligation to keep the same in repair for the accommodation of plaintiffs and, therefore, ought not to be required to lower the bridge and continue to maintain it.

Section 12 of the Act of 1849 is as follows:

"Whenever, in the construction of such road or roads, it shall be necessary to cross or intersect any established road or way, it shall be the duty of the president and directors of said company, so to construct the said road across such established road or way, as not to impede the passage or transportation of persons or property along the same; and that, for the accommodation of all persons owning or possessing land through which the said railroad may pass, it shall be the duty of such company to make or cause to be

made a good and sufficient causeway or causeways, whenever the same may be necessary to enable the occupant or occupants of said lands to cross or pass over the same, with wagons, carts and implements of husbandry, as occasion may require, and the said causeway or causeways, when so made, shall be maintained and kept in good repair by such company; and if the said company shall neglect or refuse, on request, to make such causeway or causeways, or when made, to keep the same in good order, the said company shall be liable to pay any person aggrieved thereby, all damages sustained by such person in consequence of such neglect or refusal; such damages to be assessed and ascertained in the same manner as provided in the last section for the assessment of damages: Provided, That the said company shall, in no case, be required to make or cause to be made more than one causeway through such plantation or lot of land, for the accommodation of any one person owning or possessing land through which the said railroad may pass; and where any public road shall cross such railroad, the person owning or possessing land through which the said public road may pass, shall not be entitled to require the company to erect or keep in repair any causeway or bridge for the accommodation of the occupant of said land".

It has been observed that the object of the Act of 1849 was to furnish convenient access from one part of property severed by an acquired railroad right of way to another. While it is not impossible for these plaintiffs to make a detour from the one part to the adjoining field, it would clearly be inconvenient for them. It was to provide for such and similar cases that the Act of 1849 was passed: Dubbs v. Phila. & Reading R. R. Co., 148 Pa. 66. Wasted movements in a business activity have been found to be so costly that the savings affected by time study engineers more than

justify the costs of the study by professionally trained engineers specializing in the subject. The movement of a machinist's tool bench a few inches closer to his machine can be demonstrated to be a time and motion saver, relatable in substantial production cost reduction. While time and motion losses of a farmer may not be as readily susceptible to study, they clearly represent a financial loss to the farmer.

Under the plain meaning of the Act of 1849, a property owner whose land was severed by the taking of a right-of-way for railroad purposes was given a vested right to a private crossing on their own lands over the railroad's right-of-way. It is a right as sacred as any other property right. It was granted by the State, and no power but that of the State could deprive them of it: Green v. Baltimore & Ohio Railroad Co., 245 Pa. 35.

Whether defendant or its predecessors acquired the right-of-way by agreement or condemnation, the duty on the part of defendant to furnish and maintain a causeway across the right-of-way on severed property for the convenience of the owner was a factor which formed a part of the consideration paid by the railroad company to the property owner for the acquisition. In a true sense, therefore, the owner of the property paid value for the access bridge or causeway, thus strengthening the property owner's right to have railroad company continue to maintain and repair it.

It is clearly not inconceivable that, in order to accommodate a property owner, a railroad company would provide more than one causeway over the right-of-way and thus further reduce its acquisition costs even though, under the act, no owner could require more than one causeway or bridge to be built over the right-of-way passing through any one property. The existence of more than one crossing over a right-of-way for an individual property or the existence of

a private causeway accommodating a property owner where a public road also crosses the right of way, coupled with maintenance and repair of this private crossing by the railroad company, leads to the inescapable conclusion that, though not required under the circumstances to furnish a crossing or more than one crossing, the railroad company nonetheless did so and that fact was considered and taken into account in the cost of acquisition of the right-of-way.

Defendant's contention is that the existence of an alternate route, township road 640, as a means of access by plaintiffs, compels the conclusion that defendant need not repair and maintain bridge no. 18/22.

Significantly, this record is silent as to when Route 640 came into existence as a public road and, therefore, within the exception relied upon by defendant.

We are of the opinion that, once a property owner acquired a private crossing over the right-of-way under the Acts of 1849, he cannot be divested of this right by the subsequent location of a public road across the property which would supply a less convenient alternate crossing route. It is only in those cases where a public route crossing the right-of-way is in existence that a property owner cannot compel a railroad to furnish an additional private causeway crossing.

Nor are we of the opinion that the acquisition by one person of two lots or farms, each of which enjoys the benefit of the Act of 1849 by having private access causeways built thereon and maintained by the railroad, is a sufficient reason at law for the railroad to discontinue maintaining and repairing one of the crossings. As we pointed out previously, this is a vested right for which consideration was given. It is for the accommodation and convenience of the property owner. The fact that it is not the owner individually who is directly benefited, is no legal significance. His accom-

modation in those cases where the farms are tenanted by others is indirect. Nonetheless, it is for his accommodation in legal contemplation. If we were to accept defendant's contention in this regard, we would be divesting plaintiffs of a valuable legal right without compensating them for it. Accepting as we do the fact that a convenient access from the farm buildings to the fields is a valuable right, the denial of that right to the owner of two adjacent farms, on the basis that he has access on one of them, would reduce the value of the remaining farm and thus deprive him of property without compensation. This we believe we cannot do.

CONCLUSIONS OF LAW

1. Equity has jurisdiction over this case and these parties.

2. Plaintiffs acquired a vested right to have bridge no. 18/22 maintained and repaired by defendant, by virtue of the Act of February 19, 1849, P. L. 79, sec. 12.

3. By reason of defendant's raising of the level of bridge no. 18/22, and failing to lower it upon request of plaintiffs, defendants have illegally denied plaintiffs their legal right to use bridge no. 18/22.

4. That defendant ought to be required to lower the bridge no. 18/22 to its previous position or to repair and maintain said bridge in a usable condition in its present position so as to provide plaintiffs with access for wagons, carts, and implements of husbandry over and across defendant's right of way.

5. That defendant is under a legal duty to maintain and keep in good repair bridge no. 18/22.

6. That defendant should pay plaintiff as consequential damages the amount of $1,156.

DECREE NISI

And now, July 24, 1967, it is ordered, adjudged and decreed that defendant, Reading Company, shall,

within 30 days of the date this decree becomes absolute, lower bridge no. 18/22, located on plaintiff's property in Millcreek Township, Lebanon County, Pa., where it crosses defendant's right-of-way or, in the alternative, construct or reconstruct the approaches to the bridge at its present level so as to provide the occupants of plaintiffs' premises with a good and sufficient causeway so as to enable them to cross or pass over defendant's right-of-way with wagons, carts and implements of husbandry, and in addition, to maintain and keep said causeway or overhead bridge in good repair. In addition, defendant shall pay plaintiffs the sum of $1,156 as consequential damages. Costs of these proceedings to be paid by defendant. This decree nisi shall become absolute unless exceptions thereto are taken within 20 days of the date of receipt of a copy of this decree.