J-A34037-14

2015 PA Super 154

| PA ENERGY VISION, LLC AND BLG LEASING, D/B/A HENRY STREET, A GENERAL PARTNERSHIP | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| SOUTH AVIS REALTY, INC. | |
| Appellee | No. 336 MDA 2014 |

Appeal from the Judgment entered March 14, 2014
In the Court of Common Pleas of Clinton County
Civil Division at No: 1364-12

| PA ENERGY VISION, LLC AND BLG LEASING, D/B/A HENRY STREET, A GENERAL PARTNERSHIP | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SOUTH AVIS REALTY, INC. | |
| Appellant | No. 338 MDA 2014 |

Appeal from the Judgment entered March 14, 2014
In the Court of Common Pleas of Clinton County
Civil Division at No: 1364-12

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and STABILE, JJ.

OPINION BY STABILE, J.:                                    **FILED JULY 20, 2015**

These cross-appeals arise out of an action initiated on November 16,

2012 by Appellee/Cross-Appellant PA Energy Vision, LLC and BLG Leasing,

d/b/a Henry Street (Henry Street), requesting declaratory and injunctive relief against Appellant/Cross-Appellee, South Avis Realty Inc. (South Avis), regarding the use and maintenance of a railroad crossing. South Avis contends the trial court erred in entering a final decree prohibiting South Avis, or any of its successors and assigns, from interfering in any way with Henry Street's use of the crossing known as "Crossing 2." Henry Street contends the trial court erred in requiring it to pay the restoration costs of Crossing 2. Because we conclude the trial court erred in finding that Henry Street established a right to use the railroad crossing, we reverse the judgment entered on the final decree. Henry Street's cross-appeal is denied as moot.

In 1994, South Avis, a Pennsylvania corporation, purchased the "Penn Central Mill Hall Branch a/k/a the Avis industrial track," (the Avis line) from Consolidated Rail Corporation (Conrail). The Avis line is a 30-foot wide right-of-way that passes through a 26-acre parcel now owned by Henry Street, a Pennsylvania general partnership. The deed between Conrail and South Avis remised, released and quitclaimed[1] all right, title and interest of Conrail to the described "Premises."

---

[1] The distinguishing feature of a "quitclaim deed" is that it is a conveyance of a grantor's interest in a property, rather than of the property itself. *See **Greek Catholic Congregation of Borough of Olyphant v. Plummer***, 32 A.2d 299, 300 (Pa. 1943); *see also **Southall v. Humbert***, 685 A.2d 574, 580 (Pa. Super. 1996).

As of 1994, three railroad crossings existed over the Avis line tracks. Crossing 1 was created by express grant in 1978 and is not at issue in this case. Crossing 3 was a temporary crossing established in the 1990s. It consisted merely of gravel dumped on the track bed. It, too, is not at issue here. The focus of this lawsuit is Crossing 2. Crossing 2 was 38 feet wide and has been in existence since about 1984. The crossing was constructed of amesite on the east side of the rails, stone in the middle, and chip and tar on the west side. Henry Street's predecessor in interest, Excel Homes, used Crossing 2 to move 68-foot modular homes, forklifts, and other equipment across the Avis line tracks.

In 2012, South Avis hired a contractor to repair the railroad line, which was in a state of disrepair and unsafe for train traffic. The contractor removed 115 feet of rails in order to replace the rail and the ties beneath them. The contractor also removed Crossings 2 and 3. There was some discussion regarding restoration of Crossing 2. According to the contractor, there are three ways to build a railroad crossing. The least expensive and least durable is a crossing made from loose gravel and cinders. The second is a timber panel and asphalt crossing. The most durable is a crossing made of precast concrete panels.

According to the contractor, a gravel crossing did not meet railroad standards. The cost of building a timber panel crossing was between $7,000 and $8,000, but the contractor recommended a precast concrete panel design after learning that Crossing 2 was likely to handle heavy truck traffic.

Ultimately, South Avis directed the contractor not to restore Crossing 2, because of a dispute between South Avis and Henry Street over restoration payment. **See** Trial Court Order, 12/4/12, at 1-2 (noting that South Avis directed its contractor not to restore Crossing 2 after Henry Street "impose[d] questionable limitations" on South Avis's ability to access Henry Street's property to complete the restoration). Construction exposed and raised the railroad tracks preventing Henry Street from using Crossing 2.

Henry Street sued South Avis, advancing several legal theories supporting its right to use Crossing 2. It also filed a petition for a preliminary injunction. After hearing, the trial court entered an "interim order" directing South Avis to restore Crossing 2 and for each party to pay one-half of the restoration costs. After a stay was denied, the contractor installed a 20-foot-wide precast concrete panel crossing costing $28,940.[2]

Following a full hearing on the merits, on January 8, 2014, the trial court ruled the 1994 deed from Conrail to South Avis created a right in Henry Street to continue to use Crossing 2. The trial court enjoined South Avis from interfering with Henry Street's use of Crossing 2, but ordered Henry Street to pay the full cost of restoring Crossing 2. South Avis and

_____

[2] South Avis filed an appeal from the order granting a preliminary injunction, docketed in this Court at No. 87 MDA 2013, but we quashed the appeal as moot after the contractor restored Crossing 2.

- 4 -

Henry Street filed post-trial motions. The trial court denied both motions, and this appeal and cross-appeal followed.[3] The trial court ordered both parties to file concise statements of errors complained of on appeal. The trial court did not issue a responsive opinion, but rather relied on its prior orders.[4]

We first consider South Avis's appeal. South Avis presents two questions for our review:

1. Did the trial court properly grant the extraordinary relief of a permanent injunction, despite Henry Street's failure to satisfy the three prerequisites to a permanent injunction?

2. Did the trial court properly grant preliminary injunctive relief, where Henry Street failed to meet its burden of proving all the prerequisites for a preliminary injunction?

Appellant/Cross-Appellee's Brief at 5. We address the questions presented in reverse order.

_____

[3] Both parties filed appeals from the denial of their post-trial motions. The orders denying post-trial relief are interlocutory, as an appeal of a final order in a civil case lies from the entry of judgment. *See Prime Medica Assocs. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1154 n.6 (Pa. Super. 2009). After docketing of the parties' appeals, we ordered the parties to praecipe the trial court for entry of judgment. The parties did so, thus perfecting these appeals. *See* Pa.R.A.P. 905(a).

[4] Neither party has provided this Court with copies of their concise statements or the trial court's opinion. We remind the parties that the Rules of Appellate Procedure require these items to be attached to the appellant's and cross-appellant's briefs. Pa.R.A.P. 2111(a)(11), (b) and (d).

South Avis argues the trial court erred in granting a preliminary injunction. This issue, however, is now moot because the trial court issued a final, permanent injunction. The issuance of a permanent injunction supersedes a preliminary injunction. ***Den-Tal-Ez, Inc. v. Siemens Capital Corp.***, 566 A.2d 1214, 1217 n.1 (Pa. Super. 1989) (*en banc*). "Where a preliminary injunction is in force, the issuance of a permanent injunction terminates the preliminary injunction." ***Izenson v. Izenson***, 418 A.2d 445, 446 (Pa. Super. 1980) (*per curiam*) (internal citation omitted). In ***Izenson***, for example, we dismissed an appeal from an order granting a preliminary injunction, because the trial court granted final injunctive relief during the appeal's pendency, and the appellants failed to appeal the order granting the permanent injunction. ***Id.*** Here, the trial court rendered a decision on the merits and issued a permanent injunction. Any issues regarding the granting of a preliminary injunction cannot now be considered in this appeal. ***Den-Tal-Ez***, *supra*; ***Izenson***, *supra*.

South Avis' remaining issue challenges the propriety of the trial court enjoining it from interfering with Henry Street's use of Crossing 2. In the trial court, Henry Street argued it had the right to use Crossing 2 (1) under the Railroad Act of 1849 (Railroad Act);[5] (2) by adverse possession; and (3) by laches, estoppel, and waiver. The trial court rejected those arguments,

---

[5] Act of Feb. 19, 1849, P.L. 79, No. 76 (repealed 1978).

but concluded that the 1994 deed from Conrail to South Avis granted Henry Street an "equitable right" to use Crossing 2. On appeal, South Avis argues the trial court erred in granting final injunctive relief because no legal theory supports the relief granted. We agree with South Avis that Henry Street failed to prove a legal entitlement to use Crossing 2.

The standard for granting a permanent injunction is well-settled.

> To be entitled to a permanent injunction, a party must establish a clear right to relief, and must have no adequate remedy at law, *i.e.,* damages will not compensate for the injury. Unlike a preliminary injunction, a permanent injunction does not require proof of immediate irreparable harm.

***Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Practical Knowledge***, 102 A.3d 501, 505-06 (Pa. Super. 2014) (internal citations omitted). "The grant or denial of a permanent injunction is a question of law." ***Id.*** South Avis challenges the trial court's legal conclusion that Henry Street is entitled to injunctive relief, and does not dispute any factual findings. Therefore, our standard of review is *de novo*, and our scope of review is plenary. ***See id.***

We first conclude the long-repealed Railroad Act does not apply to Crossing 2. Section 12 of the Railroad Act granted property owners the right to cross over or under a railroad that severed their property.[6] ***See Estate***

---

[6] The original language is as follows:

> Whenever, in the construction of such road or roads, it shall be necessary to cross or intersect any established road or way, it shall be the duty . . . of such company to make or cause to be

*(Footnote Continued Next Page)*

*of Spickler v. Lancaster Bd. of Comm'rs*, 577 A.2d 923, 924 (Pa. Super. 1990) (quoting ***Sonnen v. Reading Co.***, 43 Pa. D. & C.2d 737, 743 (C.P. Lebanon 1967)).  In addition, "once a property owner acquired a private crossing over the right-of-way **under the Act**[] **of 1849**, he cannot [sic] be divested of this right by the subsequent location of a public road across the property which would supply a less convenient alternate crossing route." ***Id.*** (emphasis added).  The Railroad Act was one of many laws repealed by the

---

*(Footnote Continued)* ——————————

made a good and sufficient causeway or causeways, whenever the same may be necessary to enable the occupant or occupants of said lands to cross or pass over the same, with wagons, carts and implements of husbandry, as occasion may require, and the said causeway or causeways, when so made, shall be maintained and kept in good repair by such company; and if the said company shall neglect or refuse, on request, to make such causeway or causeways, or when made, to keep the same in good order, the said company shall be liable to pay any person aggrieved thereby, all damages sustained by such person in consequence of such neglect or refusal; such damages to be assessed and ascertained in the same manner as provided in the last section for the assessment of damages: *Provided*, [t]hat the said company shall, in no case, be required to make or cause to be made more than one causeway through such plantation or lot of land, for the accommodation of any one person owning or possessing land through which the said railroad may pass; and where any public road shall cross such railroad, the person owning or possessing land through which the said public road may pass, shall not be entitled to require the company to erect or keep in repair any causeway or bridge for the accommodation of the occupant of said land.

Act of Feb. 19, 1849, P.L. 79, No. 76 § 12.  Section 12 of the Railroad Act was formerly included in Purdon's unofficial codification of Pennsylvania's laws at 15 P.S. § 4101.

Act of July 1, 1978, P.L. 596, No. 116 § 2, which created the Public Utility Code (Code). Its replacement, 66 Pa.C.S.A. § 2702, requires railroads to seek permission from the Public Utility Commission before removing grade crossings. The Code does not apply here, however, because South Avis is not a public utility.

The Railroad Act has continued viability, but only for rights vesting **before the repeal date**. For example, in *Estate of Spickler*, the railroad crossing at issue existed before the Railroad Act's repeal date. *Estate of Spickler*, 577 A.2d at 925 n.1. We therefore held, in a divided decision, that the crossing-owner's rights had vested. *Id.* at 925 & n.1; *see also* 1 Pa.C.S.A. § 1976(a) (providing that "any repeal of any civil provisions of a statute shall not affect or impair any act done, or right existing or accrued, or affect any civil action pending to enforce any right under the authority of the statute repealed"). In contrast, here Henry Street failed to show that Crossing 2 existed before 1978. Crossing 2 existed, at the earliest, as of 1984. Because the evidence shows that Crossing 2 was established after the Railroad Act was repealed, Henry Street and its predecessors in interest have no vested right to use Crossing 2 under the Railroad Act.

Nonetheless, Henry Street urges this Court to adopt the repealed Railroad Act as part of the common law. Appellee/Cross-Appellant's Brief at 16. It cites no law supporting this Court's authority to take such a measure. In essence, Henry Street would have this Court contravene the General Assembly's repeal of a statute. Given Henry Street's failure to develop this

argument and to provide any authority for us to do so, we decline Henry Street's invitation to adopt the repealed Railroad Act as part of the common law.

Henry Street also is not entitled to use Crossing 2 under an easement by prescription theory. "It is well-settled that a prescriptive easement is created by (1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use for a period of 21 years." *See Burkett v. Smyder*, 535 A.2d 671, 673 (Pa. Super. 1988). Importantly, one cannot acquire by adverse possession land within a railroad right-of-way. *A. D. Graham & Co. v. Pa. Tpk. Comm'n*, 33 A.2d 22, 31 (Pa. 1943). This is so, because "'[t]he right of way of a railroad company, whatever its established width, as soon as acquired is impressed with a public use; it constitutes a public highway. The railroad company holds it in trust for the people of the [C]ommonwealth.'" *Conwell v. Phila. & Reading Ry. Co.*, 88 A. 417, 418 (Pa. 1913) (quoting *Del., Lackawanna & W. R.R. Co. v. Tobyhanna Co.*, 77 A. 811, 813 (Pa. 1910)). The law thus creates a fiction that the Commonwealth owns railroad rights-of-way. Under the doctrine of *nullum tempus occurrit regi* (no time runs against the King), one cannot acquire property from the Commonwealth by adverse possession. *See Williamstown Borough Author. v. Cooper*, 591 A.2d 711, 715 (Pa. Super. 1991) ("Even privately owned property which has been dedicated to

public use cannot thereafter be claimed by adverse possession."), *appeal granted*, 602 A.2d 861 (Pa. 1992).[7]  Moreover, as to railroads, "[t]he public use [of the right-of-way] arises as soon as it is acquired, and **it continues at all time during the life of the franchise** against which no prescription runs."  *A. D. Graham*, 33 A.2d at 31 (emphasis added).

Up until 1994, Conrail—a railroad—owned the Avis line.  Therefore, prior to 1994, Henry Street cannot claim adverse use of Crossing 2.  Land within a railroad right-of-way cannot be claimed by prescription.  Furthermore, Henry Street cannot tack any time before 1994 to meet the 21 years required for continuous and uninterrupted use to establish a prescriptive easement.  So long as Conrail owned the Avis line, Henry Street and its predecessors could not claim prescriptive use of any crossing over the railroad.  Therefore, Henry Street's prescriptive easement claim fails.

Henry Street's "claims" of laches, waiver, and detrimental reliance are likewise unavailing for the same reason its claim for a prescriptive easement fails.  These defenses rise no higher and are deserving of no greater protection than its claim based upon a prescriptive easement that would not permit one to take property from a government entity.  *See Williamstown Borough Authority*, 591 A.2d at 715 (holding that the doctrine of laches cannot succeed where the analogous claim of adverse possession fails);

---

[7] As of the date of this writing, there is no reported decision by our Supreme Court in **Williamstown Borough Authority**.

*Glenn Hope Borough v. Kitko*, 621 A.2d 1043, 1046 (Pa. Super. 1993) (holding that estoppel, like laches, cannot succeed against a government entity where a claim of adverse possession would fail).

Henry Street further claims in its brief it is entitled to relief as a third-party beneficiary of the 1994 deed from Conrail to South Avis. We again disagree.

> In order for a third party beneficiary to have standing to recover on a contract, both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself. *Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992). Furthermore,
>
>> to be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by **one** of the parties to the contract and the **third person** that the latter should be a beneficiary, but **both parties to the contract** must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking.

*Kirschner v. K & L Gates LLP*, 46 A.3d 737, 762 (Pa. Super. 2012) (quoting *Spires v. Hanover Fire Ins. Co.*, 70 A.2d 828, 830-31 (Pa. 1950) (emphases in original), *overruled in part by*, *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983)) (parallel citations omitted).

The 1994 deed was a grant from Conrail to South Avis. The deed does not name or mention Henry Street's predecessor in interest. In addition, the deed does not manifest an express intent by Conrail and South Avis to create third-party beneficiaries. At best, Henry Street's predecessor is an

incidental beneficiary. Henry Street's attempt to rely upon the "subject to" language in the deed as support for third party beneficiary status is unavailing. The subject to provision in the Conrail deed provides as follows:

> UNDER and SUBJECT, however, to (1) whatever rights the public may have to the use of any roads, alleys, bridges or streets crossing the Premises, (2) any streams, rivers, creeks and water ways passing under, across or through the Premises, and (3) any easement or agreements of record or otherwise affecting the Premises, and to the state of facts which a personal inspection or accurate survey would disclose, and to any pipes, wires, poles, cables, culverts, drainage courses or systems and their appurtenances now existing and remaining in, on, under, over, across and through the Premises, together with the right to maintain repair, renew, replace, use and remove same.

Deed from Conrail to South Avis, 9/29/94, at 3. Nowhere does this language grant Henry Street a property right in Crossing 2. The purpose of this clause is to note specifically any encumbrances, limitations or reservations that might affect the interest conveyed by Conrail. Clause (1) informs South Avis that it took the Avis line subject to whatever crossings the public may have over it. Crossing 2 is not a public crossing. It is located entirely within Henry Street's property. Moreover, clause (1) does not create the right to establish crossings. Clause (2) is not applicable.

Clause (3) has three components, none of which vests rights in Crossing 2 to Henry Street. First, title is subject to easements or agreements of record, *i.e.*, Crossing 1, affecting the deeded property. The record does not reflect that Crossing 2 either is a recorded easement or exists by virtue of any other publically recorded agreement. Second, clause

(3) subjects title "to the state of facts which a personal inspection or accurate survey would disclose." This language serves to protect Conrail against claims that the interest it transferred is clouded by certain encumbrances not otherwise expressly disclosed by Conrail in the deed. This language places a grantee on notice that, in addition to other encumbrances expressly called out in the deed, the Premises also is subject to other claims that an accurate survey or a visible inspection of the property might reveal. In this case, while the use of Crossing 2 was not expressly noted under the Conrail deed, it was visible upon an inspection of the property. This in of itself, however, does not create a vested right in Henry Street to Crossing 2. The visual presence of Crossing 2 merely places the grantee (and presumably all subsequent grantees barring no changes in the exception language) on notice that its interest in the Premises is subject to other interests, if any, that exist by virtue of Crossing 2 being on the Premises. Hence, Henry Street can claim no vested right in Crossing 2 merely by virtue of the physical presence of Crossing 2 upon the Premises. The final proviso under clause (3), which permits a grantee to maintain, repair, renew, replace, use and remove any pipes wires, poles, cables, culverts, drainage courses or systems and their appurtenances, does not apply to Crossing 2.

The trial court purported to find an "equitable right" in Henry Street to use Crossing 2 based on the language of the 1994 deed alone. *See* Trial Court Final Decree, 1/8/14, at 3. The trial court, however, cited no authority

for such a nebulous standard. Indeed, the law is otherwise, in that a court generally cannot use equity to resolve disputes over legal title to property. ***Ohringer Home Furniture Co. v. Hollingsworth***, 100 A.2d 62, 64 (Pa. 1953). "It has long been settled that equity is not the proper form of action to seek a determination of legal title to real property interests unless there is substantial agreement between the parties as to ownership." ***Trimble Servs., Inc. v. Franchise Realty Interstate Corp.***, 285 A.2d 113, 117 (Pa. 1971). And while a court may grant equitable relief regarding property rights in an appropriate case, ***see id.***; ***see also Williams v. Bridy***, 136 A.2d 832, 836 (Pa. 1957) ("[**I**]**f the kernel of the controversy is the legal title to land, then equity cannot be invoked**; but, where the question of the legal title is incidental and subordinate to other elements which call for the exercise of equitable remedies, equity will take and retain jurisdiction . . . .") (internal quotation omitted) (emphasis in original), a court cannot determine title to property using unnamed, undefined "equitable rights." In ***Williams***, for example, a chancellor entered a preliminary injunction that prohibited the defendant from entering onto a tract of land and removing material from a culm bank. ***Williams***, 136 A.2d at 834. The crux of the controversy was ownership of the land and culm bank. ***Id.*** at 835-36. On appeal, our Supreme Court reversed, because the plaintiff failed to establish legal title in the land or culm bank:

> The issuance of even a preliminary injunction under the instant circumstances is in derogation of the long recognized rule in our Commonwealth that equity will not grant injunctive relief unless

> title is **clearly** established. . . . [A]bsent proof of a **clear legal title** injunctive relief cannot be granted, and the record shows no such proof.

*Id.* at 837-38 (emphases in original). The trial court here similarly erred in granting equitable relief without first identifying a valid source of Henry Street's legal right to relief.

In light of the foregoing whereby we have reversed the trial court's judgment granting equitable relief to Henry Street, we need not address Henry Street's cross-appeal that the trial court erred in imposing upon Henry Street the full costs of repair of Crossing 2. Because we reverse the trial court's judgment, it follows also that the granting of relief imposing costs of restoration as a part of that judgement is a nullity. *Cf. Holt v. Navarro*, 932 A.2d 915, 920 (Pa. Super. 2007) (declining to address appellant's remittitur argument, because this Court reversed the judgment entered in appellee's favor and remanded for entry of judgment *n.o.v.* in appellant's favor).

Judgment reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/20/2015