482 A.2d 1073

**FRANKEL–WARWICK LIMITED PARTNERSHIP**

**v.**

**LOCAL 274, HOTEL, BARTENDERS AND RESTAURANT EMPLOYEES UNION, AFL–CIO and James Small, Individually and in his official capacity as President, Local 274, Hotel, Bartenders and Restaurant Employees Union, AFL–CIO, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 23, 1983.

Filed Oct. 5, 1984.

48

Ira Silverstein, Philadelphia, for appellants.

Andrea B. Wapner, Philadelphia, for appellee.

Before MONTEMURO, WATKINS and CERCONE, JJ.

CERCONE, Judge:

Frankel-Warwick Limited Partnership, plaintiff and appellee in this equity action, is owner and proprietor of the Warwick Hotel, which is located at 17th and Locust Streets, Philadelphia. The union was the collective bargaining representative until January 1982 of the employees working in the restaurants and banquet room of the Warwick. Until then, R and K Caterers rented those facilities; however, its lease was assigned to Hospitality Investments, Inc. (HHI). HHI assembled the former R and K employees and announced that the union was no longer to be recognized as the collective bargaining agent. Moreover, all of the former R and K employees were on a trial basis and their wage scale was sharply reduced. The union began picketing HHI immediately by maintaining a presence by members of the union at the entrances to the Warwick Hotel. HHI had an office within the hotel and testimony at the

hearing below established that the union timed its picketing to coincide with various banquets which HHI scheduled.

Appellee Warwick Hotel has no part in the labor dispute. It has instituted this complaint in equity to restrain what it asserts was the mass picketing of the hotel entrances. An *ex parte* injunction was granted on February 25, 1982, which limited picketing to two pickets at each entrance and no relief pickets within one thousand feet from either entrance. On March 10, 1982, an application for preliminary injunction was made and after testimony was taken, it was granted on the same terms. The union then demanded a final hearing after which a final decree was filed. This decree maintained the original basic provisions of only two pickets per entrance, but with no relief pickets within 500 feet in any direction. The union appealed from this final decree.

On appeal from a final decree, the standard of review is not whether there were "any apparently reasonable grounds for the action of the court below", as is the case when the issuance of denial of preliminary injunctive relief is reviewed. See e.g.: *Link Belt Co. v. Local Union No. 118 of American Federation of Technical Engineers*, 415 Pa. 122, 129, 202 A.2d 314, 318 (1964); *Philadelphia Minit-Man Car Wash Corp. v. Building and Construction Trades Council of Philadelphia and Vicinity*, 411 Pa. 585, 589, 192 A.2d 378, 380 (1963); *Mead Johnson & Co. v. Martin Wholesale Distributors, Inc.*, 408 Pa. 12, 19, 182 A.2d 741, 745 (1962). On the contrary, the test is whether the trial court, in entering a final decree, abused its discretion or committed an error of law. *Westinghouse Electric Corp. v. United Electrical, Radio & Machine of America, (CLO) Local 601 et al.*, 353 Pa. 446, 46 A.2d 16, 18 (1946) (Lower court denied injunctive relief and dismissed complaint). *See also: Sack v. Feinman*, 489 Pa. 152, 165–66, 413 A.2d 1059, 1066 (1980); *Felmlee et al. v. Lockett*, 466 Pa. 1, 7, 351 A.2d 273, 276 (1976); *Krosnar v. Schmidt Krosnar McNaughton Garrett Co.*, 282 Pa.Super. 526, 534, 423 A.2d 370, 374 (1980). *Neshaminy Contractors, Inc. v.*

*Philadelphia, Pennsylvania Building and Construction Trades Council, AFL–CIO,* 303 Pa.Superior Ct. 420, 423, 449 A.2d 1389, 1390 (1982).

The Pennsylvania Labor Anti-Injunction Act (43 P.S. § 206a, *et seq.*) limits the jurisdiction of courts over labor disputes to certain specific situations. These measures were enacted under a public policy favoring the rights of the worker:

"[I]t is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint or coercion of employers of labor or their agents in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 43 P.S. § 206b(a).

However, courts do have jurisdiction to issue injunctions in labor disputes where, during the course of the dispute, the representatives of a labor organization "seize, hold, damage, or destroy the plant, equipment, machinery, or other property of the employer with the intention of compelling the employer to accede to any demands, conditions, or terms of employment, or for collective bargaining." 43 P.S. § 206d(d).

The chancellor took the within dispute out of the purview of the Act by the aforementioned exception. In its opinion in support of the Final Decree, the court found that:

"... [P]ickets estimated by each witness as 25 in number, had occupied the sidewalk fronting the main or 17th Street entrance of the hotel, described as 18 feet wide. The pickets were 18 inches apart and persons seeking to enter the hotel had to pick their way through spaces in the picket line, sometimes brushing against the pickets as they did so. Passersby on the sidewalk were seen to have to detour into the vehicular cartway to get by. The innermost of the pickets were four inches from the first or bottom step of the hotel entrance. Security guard Brown testified the pickets were talking in loud voices.

On one occasion, a woman entering the building asked hotel personnel for help to pass through the line and a security guard escorted her through. Picketing occurring at hours of the day when transients usually arrive would prevent taxicabs or airport limousines from pulling up to the curb to discharge passengers, forcing them to discharge in the middle of the cartway. Picketing also was in fact engaged in at times when none of the business of HHI, the employer of the union members, was being carried on and none of these employees were on duty."

■ The right of picketing, when free from coercion, intimidation, and violence, is a right constitutionally guaranteed as one of free speech. *Westinghouse Electric Corporation v. United Electrical, Radio and Machine Workers of America, (C.I.O.) Local 601*, 353 Pa. 446, 46 A.2d 16 (1946). From our consideration of the record we disagree with the trial court that the activities of the union constituted a "seizure" of the Warwick Hotel as that phenomenon has been interpreted by our courts. Moreover, we find the court's alternative reliance on 43 P.S. § 206i as unsupported by the evidence.[1]

Mass picketing which denies access to a plant constitutes a plant seizure. *Westinghouse Electric Corp. v. Int'l Union of Electrical, Radio and Machine Workers, AFL–CIO*, 262 Pa.Superior Ct. 315, 396 A.2d 772 (1978) (cases cited therein). In that case, the evidence clearly and completely

---

1. Although the trial court made no findings of fact, as required by the Labor Anti-Injunction Act, § 206i, it cited these subsections of the Act as applicable in this case:
   "(a) .... unlawful acts .... have been committed and will be continued unless restrained.
   (b) substantial and irreparable injury to complainant's property will follow unless relief requested is granted.
   (c) greater injury will be inflicted upon complainant by the denial of relief than ... upon defendants by granting relief.
   (d) no item of relief granted ... is prohibited under section [six] of this act. (43 P.S. § 206f.).
   (e) complainant has no adequate remedy at law.
   (f) the public officers charged with the duty to protect complainant's property are unable to furnish adequate protection."
   The evidence does not support these sub-sections.

supported the court's finding that a plant seizure had occurred. Our court stated that "large numbers of pickets massed at every gate leading to Westinghouse's plants and prevented, by physical violence or express and implied threat thereof, entrance to the facilities by all persons who attempted to enter." *Id.,* 262 Pa.Superior Ct. at 319, 396 A.2d at 774. In *Altemose Construction Co. v. Building and Construction Trades Council of Phila.,* 449 Pa. 194, 296 A.2d 504 (1972), the Supreme Court had no difficulty in concluding that the activities of the defendant fell within the violence exception to the Labor Anti-Injunction Act, 43 P.S. § 206d. There one thousand workers "descended" on a construction site. Damage was estimated at $300,000; two security guards were stoned and their vehicle was destroyed; police could not control the mob; members of the defendant labor organization cheered the scene of violence and destruction. Thus, an injunction was properly ordered.

In *Neshaminy Contractors, Inc. v. Philadelphia, etc., supra,* our court reversed the final decree of the court which refused to issue an injunction where the evidence, including videotapes, established that vehicles approaching the entrance to an employer's construction site were denied access.

"When a vehicle approached the gate, one or more pickets engaged the driver in conversation while several others placed themselves in front of the vehicle. The latter pickets refused to move, and the vehicle was thereby denied entrance. The absence of violence, a fact noted by the trial judge, was attributable solely to the unwillingness of approaching vehicle operators to challenge physically the pickets stationed in front of their vehicles." *Id.* 303 Pa.Superior Ct. at 422, 449 A.2d at 1390.

In *Capital Bakers v. Local Union No. 464 of the Bakery and Confectionary Workers International Union (AFL–CIO) of America,* 281 Pa.Superior Ct. 384, 422 A.2d 521 (1980), the injunction limiting picketing was affirmed where the defendant union members scattered roofing nails on the driveways to a plant which it was striking. There was evidence of threats attributable to the defendants also.

■ In the instant case, the evidence established of record falls short of that amounting to a seizure or to violence which would qualify within the exception to the Labor Anti-Injunction Act. Mere difficulty of passage of the hotel's guests owing to the large number of pickets absent an intent to prevent their entrance and egress cannot be termed "seizure" of the hotel. On the contrary, on the primary night in question, each of the 20–25 pickets wore a sign publicizing their grievance to those attending a banquet catered by HHI, the employer whom the union was picketing. Their stated goal was to educate those attending the banquet about their grievances. While the presence of the pickets may have made travel on the sidewalk somewhat difficult, we do not perceive from the record any instance of threats, intimidation or physical restraint to constitute a seizure. We, therefore, feel the trial court abused its discretion in limiting appellants' right to picket as part of their labor dispute.[2]

Order of the lower court is reversed and the final decree is vacated.

WATKINS, J., dissents.

---

2. Only the activities occurring on five specific days of picketing were discussed at the hearing. On only one was the number of pickets between 20 and 25 people. On the remaining days there was sporadic picketing with from 3 to 10 people and no evidence of blocking of entrances.