2023 PA Super 225

| | | |
|---|---|---|
| PG PUBLISHING COMPANY, INC., AND THE BUTLER EAGLE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PITTSBURGH TYPOGRAPHICAL UNION #7 (CWA LOCAL 14827); | : | No. 1300 WDA 2022 |
| PITTSBURGH NEWPAPER PRINTING PRESSMAN/PAPER HANDLERS UNION #9 (TEAMSTERS LOCAL 24M/9N); PITTSBURGH MAILERS UNION #22 (CWA LOCAL 14842); AND NEWSPAPER, NEWSPRINT, MAGAZINE AND FILM DELIVERY DRIVERS, HELPERS, AND HANDLERS (TEAMSTERS #205/211); NEWSPAPER GUILD OF PITTSBURGH LOCAL #38061; DON MCCONNELL, IN HIS INDIVIDUAL CAPACITY AND IN HIS CAPACITY AS THE PITTSBURGH TYPOGRAPHICAL UNION #7 (CWA LOCAL 14827) PRESIDENT; CHRISTOPHER V. LANG, IN HIS INDIVIDUAL CAPACITY AND IN HIS CAPACITY AS THE PITTSBURGH NEWS PRINTING PRESSMAN/PAPER HANDLERS UNION #9 (TEAMSTER LOCAL 24M/9N) PRESIDENT; JOHN A. CLARK, JR., IN HIS INDIVIDUAL CAPACITY AND IN HIS CAPACITY AS THE PITTSBURGH MAILERS UNION #22 (CWA LOCAL 14842) PRESIDENT; EDWARD A. BOEHM, IN HIS INDIVIDUAL CAPACITY AND IN HIS CAPACITY AS THE NEWSPAPER, NEWSPRINT, MAGAZINE AND FILM DELIVERY DRIVERS, HELPERS, AND HANDLERS (TEAMSTERS #205/211) PRESIDENT; ZACHARY L. TANNER, IN HIS INDIVIDUAL CAPACITY AND IN HIS CAPACITY AS THE NEWSPAPER | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | |

| | |
|---|---|
| GUILD OF PITTSBURGH LOCAL #38061 PRESIDENT; JOSEPH BAKER; MARCY RUBIN; ROBERT BOYLE; AND ALL OTHERS CONSPIRING, ACTING IN CONCERT OR OTHERWISE PARTICIPATING WITH THEM OR ACTING IN THEIR AID OR BEHALF | : : : : : : : : |

Appellants

Appeal from the Order Entered November 1, 2022
In the Court of Common Pleas of Butler County Civil Division at No(s):
AD-2022-10850

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.*

OPINION BY MURRAY, J.:                          **FILED: November 6, 2023**

Five labor unions and various individual members of those unions (Appellants) appeal from the permanent injunction issued against them and in favor of PG Publishing Company, Inc. (Post-Gazette), and the Butler Eagle (collectively Publishers).[1]  After careful review, we affirm in part, reverse in part, and remand for further proceedings.

---

* Retired Senior Judge assigned to the Superior Court.

[1] Appellants also purport to appeal from the October 28, 2022, grant of a preliminary injunction.  **See** Notice of Appeal, 11/4/22, at 1 (unnumbered). However, "The issuance of a permanent injunction supersedes a preliminary injunction." **PA Energy Vision, LLC v. S. Avis Realty, Inc.**, 120 A.3d 1008, 1012 (Pa. Super. 2015).  "Where a preliminary injunction is in force, the issuance of a permanent injunction terminates the preliminary injunction." **Id.**  Further, where a trial court "rendered a decision on the merits and issued a permanent injunction[, a]ny issues regarding the granting of a preliminary injunction cannot now be considered in this appeal." **Id.**  Thus, any claims arising from the issuance of the preliminary injunction are moot. **Id.**

The trial court described the underlying facts:

The Post-Gazette conducts business primarily in the City of Pittsburgh with distribution locations in and around Allegheny County. The Butler Eagle business offices, along with its printing, bundling, and distribution operations, are situated in one (1) structure [(the facility)] located in a residential neighborhood at 514 West Wayne Street, City of Butler.

The Post-Gazette [entered] collective bargaining agreements … with the various [Appellants, which] expired in 2017. Post-Gazette unionized employees have been working without a contract since. On October 6, 2022, [Appellants] began to strike. The picketing started at the Post-Gazette facility in Clinton, Pennsylvania. It became aggressive and threatening.[2] To [] continue publishing and distributing its newspaper to subscribers and the [] public, the Post-Gazette contracted with the Butler Eagle for printing and bundling services. Although no written contract was offered into evidence, Ms. [Tammy] Schuey[, general manager] of the Butler Eagle[,] indicated the initial printing of the Post-Gazette occurred on October 15, 2022. The Post-Gazette only publishes a print edition of its newspaper every Thursday and Sunday. The printing and bundling of these editions occur Wednesday and Saturday nights at the [] facility. There is no evidence [Appellants'] strike activities take place in Butler other than late at night on Wednesday and Saturday.

The … facility … has only one (1) delivery gate allowing for entry to Wayne Street[] and exit from the Butler Eagle to this public street. Residential parking is permitted in front of the numerous homes located directly across from the delivery gate. … [Appellants] began picketing at the Butler Eagle's delivery gate at night on Wednesday, October 19, 2022.[3] The picketers blocked the Post-Gazette's white distribution vans from exiting to

---

[2] Teamsters' Union Business Agent, Joseph Barbano admitted picketers had placed "nail boards" at the Clinton facility, that were only removed after police involvement. N.T., 10/31/22, at 118-19.

[3] Picketing also occurred that day at a Post-Gazette facility in McKees Rocks, Allegheny County. N.T., 10/31/22, at 19-21. The picketers punctured tires on two Post-Gazette vehicles. *See id.* These incidents were captured on video. *See id.*; *see also* Publishers' Exh. 1.

Wayne Street from the [] facility. The Butler City Police were contacted by Butler Eagle employees. Just prior to the police arriving, the white vans were able to get through the picketers and depart using Wayne Street. There are no other exit routes available for the Post-Gazette newspaper distribution vehicle[s] to use.

Trial Court Opinion, 11/14/22, at 2-4 (footnote omitted, footnotes added).

The trial court found:

On Saturday, October 22, 2022, about 15-20 Union picketers were stationed outside the Butler Eagle's delivery gate. Some picketers mingled in the middle of Wayne Street. The Butler City police were present at the beginning of the demonstration, but eventually the officers had to leave. At approximately 11:30 p.m., as distribution vans loaded with Post-Gazette newspapers attempted to leave the [] facility, a picketer flickered a bright flashlight aimed at the driver of each vehicle ([Publishers'] Exh. 2 at 3:13). Picketers were instructed to block each van's exit. About five or six picketers stood directly in front of the van, with additional picketers standing behind them in Wayne Street ([Publishers'] Exh. 2 at 3:09-3:36; and Exh. 3). A total of nine (9) picketers blocked the van's path. Other picketers were at each side of the van ([Publishers'] Exh. 3). A picketer leaned his body weight directly on the van's front grille area, as it slowly attempted to exit to Wayne Street ([Publishers'] Exh. 2 at 3:27-3:35).

An individual in the front passenger seat of the van spray[ed] an unidentified aerosol substance toward the picketers from the van window ([Publishers'] Exh. 5 at 6:17). Some picketers experienced throat irritation and watery eyes from the unknown aerosol[.] … The picketers in front of the van stepped aside, as the van sped away. An accompanying security vehicle followed close behind the van at high speed ([Publishers'] Exh. 2 at 3:37).

Another white newspaper distribution van directly behind the security vehicle attempted to exit the Butler Eagle's delivery gate, along with a trailing red SUV security vehicle ([Publishers'] Exh. 2; [Publishers'] Exh. 3; and [Publishers'] Exh. 4). A picketer bang[ed] a fist on the driver's window on the second van as it tried to safely enter Wayne Street ([Publishers'] Exh. 2 at 3:48). Picketers again organized in the public street, as calls are heard

to, "hold the street," "get in the street," and "don't let him out." ([Publishers'] Exh. 2 at 3:56; and [Publishers'] Exh. 5). A masked picketer [threw] a metal thermos at the van window, pick[ed] it off the street, and [threw] it again at the van's side window, causing damage ([Publishers'] Exh. 3 at 4:51 and 4:56). The second van made it through the picket line. As the red security vehicle attempt[ed] to exit, a picketer[,] later identified as [Appellant] Joseph Baker, [threw] a sign at [the] front of the vehicle, leaving a dent in the side of the SUV ([Publishers'] Exhibit 2 at 4:17; [Publishers'] Exh. 4; and [Publishers'] Exh. 7a). Picketers walk[ed] up to the distribution vehicle attempting to exit the [] facility and [struck] both the van and the red SUV with an unknown object ([Publishers'] Exh. 2 at 4:30). Several individuals stood on front porches of the residences lining Wayne Street[,] viewing the picketers' activities at the Butler Eagle's delivery gate area ([Publishers'] Exh. 2). The Butler City Police were again called to the scene by Butler Eagle employees. Upon law enforcement's arrival, the picketers' aggressions ceased.[4]

*Id.* at 4-5 (footnote added).

On October 28, 2022, Publishers filed a complaint in equity and a motion for injunctive relief. In the complaint, Publishers averred Appellants:

Willfully and illegally engaged in mass picketing, physical obstruction, violence, intimidation, coercion, and threats of the same in or about [the] facility and adjacent property.

….

[Appellants engaged in p]hysically obstructing [the] facility's only ingress/egress point with vehicles and persons. Specifically, video evidence shows [Appellants] standing in front of vehicles, yelling obscenities, and informing the individuals that they were

---

[4] Later that evening, the picketers moved from the Butler Eagle to a Post-Gazette facility in Bridgeville, Allegheny County. N.T., 10/31/22, at 47-48. While at the Bridgeville facility, Teamsters' Union member Steve Gentille, who was armed with a knife, blocked a truck from leaving; the independent contractor who drove the truck engaged in a physical altercation with Gentille. *Id.* at 28, 47-48, 121; *see also* Publishers' Exh. 5.

> prohibited from leaving the facility. … [Appellants threw] projectiles at vehicles[,] … [which] resulted in a shattered window.

Complaint, 10/28/22, at 8-10 (emphasis omitted).

That same day, the trial court issued an *ex parte* preliminary injunction. The preliminary injunction prohibited Appellants from "engaging in mass picketing or otherwise obstructing … ingress to and egress from the Post-Gazette Facilities and [the] facility." Order, 10/28/22, at 3. It also barred Appellants from "preventing or attempting to prevent by mass picketing, physical obstruction, violence, intimidation, coercion, threats, or other means [and u]sing any means to coerce, threaten or other means" individuals from "entering or leaving" all the facilities, or those accessing or exiting all the facilities, or those making deliveries. *Id.* The preliminary injunction limited the number of picketers at any "entrance, exit, entrance or exit ramp, or any other areas of ingress to or egress from" the facilities to five. *Id.* at 4.

An evidentiary hearing took place on October 31, 2022. On November 1, 2022, Appellants filed a motion to vacate the *ex parte* preliminary injunction and dismiss the case for lack of jurisdiction. Following the hearing, the trial court issued its final injunction.

Unlike the preliminary injunction, the trial court limited its permanent injunction to the Butler facility. Permanent Injunction, 11/1/22, at 2 (unnumbered). The permanent injunction prohibited Appellants from:

> 1. Stationing more than ten (10) in-motion pickets at any one time;

2. Crossing in or upon the area in which persons or motor vehicles enter from, or exit to West Wayne Street, at the specific area referred to as the "Rear Fenced Gate," where delivery and distribution vehicle along with Butler Eagle employees, its agents, invitees, and contractors, entering inside motor vehicles from, or exiting to West Wayne Street, a public right-of-way.

3. Blocking, obstructing, or picketing at the [ ] facility at the Rear Fenced Gate area;

4. Threatening, harassing, intimidating or attempting to threaten, harass, intimidate, or unlawfully interfering, either directly or indirectly with any person(s) or person(s) operating any motor vehicle entering or exiting, or attempting to enter or exit the Rear Fenced Gate area at [the facility];

5. Blocking, obstructing, or picketing anywhere in, or on, or upon West Wayne Street, a public right-of-way;

6. Blocking, obstructing, or picketing anywhere in, on, or upon the public sidewalk on the [s]outh side of West Wayne Street in front of the residences across from [the facility];

7. Throwing any object(s) or attempting to throw any object(s) at any person or motor vehicle entering or exiting or attempting to enter or exit the Rear Fenced Gate area at [the facility].

*Id.* at 2 (unnumbered, underlining in original). That same day, the trial court issued an order denying Appellants' motion to vacate the preliminary injunction as moot. The instant, timely appeal followed.[5]

Appellants raise six issues for our review:

1. Whether [the trial court] committed an error of law by failing to find that the Labor Anti-Injunction Act[, 43 P.S. § 206a, *et seq.* (the LAIA),] applies to [Publishers'] request for injunctive relief[?]

_____

[5] Appellants and the trial court complied with Pa.R.A.P. 1925.

- 7 -

2.      Whether [the trial court] committed errors of law and divested itself of jurisdiction to issue any injunctive relief in the parties' labor dispute by failing to comply with the strict requirements of [the LAIA?]

3.      Whether the [trial court] committed an error of law by failing to find that injunctive relief was prohibited because [Publishers] violated their legal obligations and failed to make every effort to settle the labor dispute[?]

4.      Whether [the trial court] committed an error of law by prohibiting Appellants from picketing and patrolling on a public street, public sidewalks, and other places they may lawfully be in violation of [the LAIA], the First Amendment, and the Pennsylvania Constitution[?]

5.      Whether [the trial court] committed an error of law by failing to award Appellants reasonable attorneys' fees and costs[?]

6.      Whether [the trial court] committed an error of law that requires all injunctive relief be dissolved by failing to comply with the requirements of Pa. R. Civ. P. 1531(f)(1) and (f)(3)[?]

Appellants' Brief at 10-11.

We begin with our scope and standard of review:

To be entitled to a permanent injunction, a party must establish a clear right to relief, and must have no adequate remedy at law, *i.e.*, damages will not compensate for the injury. Unlike a preliminary injunction, a permanent injunction does not require proof of immediate irreparable harm.

The grant or denial of a permanent injunction is a question of law. Regarding the trial court's legal determination, our standard of review is *de novo*, and our scope of review is plenary. As in all equity matters, however, we **must accept the trial court's factual findings and give them the weight of a jury verdict** where they are supported by competent evidence.

*Liberty Place Retail Assoc., L.P. v. Israelite School of Universal, Prac.*

*Knowledge*, 102 A.3d 501, 505-06 (Pa. Super. 2014) (emphasis added).

With respect to labor disputes, our Supreme Court has confirmed:

Labor picketing, **as long as it is not coercive, intimidating, or violent**, is recognized as a protected form of assembly and free speech by both the United States and Pennsylvania Constitutions. *See* U.S. Const. Amend. I and Pa. Const. Art. I, § 7. In order to preserve the delicate balance struck between the union's right to assemble and the company's ability to do business and bargain with the union in a lawful way, the Pennsylvania Legislature enacted the [LAIA].

Under Section 206d of the [LAIA], the courts of this Commonwealth are generally prohibited from issuing injunctions or restraining orders in cases involving labor disputes. Section 206d, however, does permit a court to issue an injunction in those cases in which striking employees "seize" an employer's property. As it states,

No court of this Commonwealth shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case included within this act, except in strict conformity with the provisions of this act. … Provided, however, that this act shall not apply in any case ... (d) Where in the course of a labor dispute as herein defined, an employee, or employees acting in concert, or a labor organization ... **seize, hold, damage, or destroy the plant, equipment, machinery, or other property of the employer with the intention of compelling the employer to accede to any demands, conditions, or terms of employment, or for collective bargaining.**

43 [P.S.] § 206d.

We have previously held on numerous occasions that mass picketing constitutes a seizure for the purposes of Section 206d when it forcibly denies an owner of property or his agents and employees free access to that property. *See*, *Wilkes–Barre Indep[.] Co. v. Newspaper Guild*, [] 314 A.2d 251 ([Pa.] 1974); *Westinghouse Electric Corp. v. United Elec[.] Workers* (*Westinghouse I*), [] 46 A.2d 16 ([Pa.] 1946); *Westinghouse Elec[.] Corp. v. United Elec[.] Radio & Machine Workers of America* (*Westinghouse II*), [] 118 A.2d 180 ([Pa.] 1955); *Carnegie–Illinois Steel Corp. v. United*

*Steelworkers*, [] 45 A.2d 857 ([Pa.] 1946); *Wortex Mills v. Textile Workers Union*, [] 85 A.2d 851 ([Pa.] 1952); *Philadelphia Minit–Man Car Wash v. Bldg. & C.T.C.*, [] 192 A.2d 378 ([Pa.] 1963).

*Giant Eagle Mkts. Co. v. United Food & Com. Workers Union, Loc. Union No. 23*, 652 A.2d 1286, 1292 (Pa. 1995) (emphases added).

In their first issue, Appellants maintain the trial court "committed an error of law when it failed to find [the LAIA] applied to [Publishers'] request for injunctive relief." Appellants' Brief at 22. Appellants argue the trial court erred in finding a seizure occurred because "[a]s a matter of law, a 'seizure' of the facility does not occur when there are a mere 12 to 15 picketers present, five to six people standing around a vehicle, and a vehicle is delayed from leaving by only 20 seconds." *Id.* at 23 (citations omitted). Appellants further claim there was "no competent evidence" Appellants caused property damage and no "competent evidence" that "the seizure or property damage was done with the intent of compelling [Publishers] to meet their demands in the labor dispute." *Id.* at 26-27.

This Court has recognized:

A trial court's decision that a seizure occurred must be upheld if that decision rests upon reasonable grounds. [*Giant Eagle Mkts., Co.*, *supra*, 652 A.2d at 1293] ("The Superior Court improperly reweighed the evidence *de novo* and reversed the trial court's decision."). Pennsylvania law has long held that "[f]orcibly to deny an owner of property or his agents and employees access to that property ... is in practical and legal effect a seizure or holding of that property."[] *Carnegie–Illinois Steel Corp*[*.*, 45 A.2d at 861] (finding that a seizure occurred during a labor dispute when picketers severely restricted or interfered with the ingress and egress of the plant's employees or agents). We look first to

a well-regarded and oft-cited opinion by our Supreme Court for succinct guidance:

> If the owner be deprived of the use and enjoyment of the property so that it becomes utterly valueless to him it is effectively seized and held whether the force employed for that purpose be exerted within the building or immediately without. **The control of the entrances is control of the plant.**

[***Westinghouse I***, 46 A.2d at 20].

***Turner Constr. v. Plumbers Loc. 690*** (***Turner***), 130 A.3d 47, 60 (Pa. Super. 2015) (emphasis added).

Here, the trial court found:

[Appellants] caused property damage [to Publishers'] distribution and vehicles. The video clips of the picketer[s'] activities clearly show [the picketers] throwing objects at the vehicles. ([Publishers'] Exh. 2 at 3:58, 4:17; and [Publishers'] Exh. 3 at 4:51, 4:56). The resulting property damage[ is] also shown in the photographs ([Publishers'] Exh. 7a-7d). Further, video evidence confirms picketers walking up to the moving vehicles and pounding on the sides of the distribution vans multiple times ([Publishers'] Exh. 2 at 4:30). The photographic, video, and testimonial evidence all establish property damage caused by the picketers' conduct at the Butler Eagle's sole delivery gate, while picketing.

[Appellants] contend[] there was no evidence [its] picketers are the actors who caused the damage. This is unpersuasive given all the credible evidence taken as a whole. Counsel for [Appellants] asserts the picketers broke a vehicle's window and threw objects at the newspaper distribution vans in retaliation for the unknown aerosol being sprayed at them by a front seat passenger in one of the vans. In light of the indisputable video evidence, [] counsel's argument is obviously misplaced.

Second, [Appellants'] conduct constitutes a seizure under § 206d(d), which occurs when picketers interfere with the ingress and egress of a plaintiff[']s property. [***Turner***, 130 A.3d at 61]. The interference need not be violent or dangerous, so long as

- 11 -

picketers inhibit visitors from entering and exiting the property. *Id.* If the interference occurs in a consistent pattern, then it is a seizure. [*Giant Eagle Mkts., Co.*, 652 A.2d at 1292]. Picketers were present each night, except the initial night[] the Post-Gazette was being printed, at the [facility's] delivery gate to picket. On those nights, the picketers blocked or attempted to block the delivery vans' exit to Wayne Street.

Only one (1) gate provides for ingress and egress to the [facility]. The picketers selected this location to express their grievances. However, they exceeded lawful bounds by blocking or otherwise hindering [Publishers'] vehicles from exiting to distribute newspapers. [*Westinghouse II*, 118 A.2d at 181] ("...picketing to the extent to which it is designed to seize and in effect does seize and hold the employer's plant by the methods here employed does not fall within either constitutional, statutory, common law, or equitable protection"). The picketers' design to seize the [facility] was apparent when repeated commands are heard during the video to, "hold the street," "get in the street," and "don't let him out." ([Publishers'] Exh. 2 at 3:09, 3:56). Their intention is crystalized when certain picketers are positioned in front of the vehicles attempting to exit ([Publishers'] Exh. 2 at 3:19-3:36). The testimony does not show [Appellants'] union leaders sanctioned the picketers conduct, but a union policy of blocking is not necessary to find a seizure. *Giant Eagle Mkts., Co.*, 652 A.2d at 1292 (there is a seizure whether conduct is in furtherance of an express union policy or in direct contradiction of union representatives' orders).

[Appellants] further argue the picketers' actions could not constitute a seizure because [Publishers'] vehicles eventually made it through the picket line and on to Wayne Street. This argument is unpersuasive. While the newspaper distribution vehicles eventually broke through the picketers and gained access to the public street, a seizure of the Butler Eagle's sole delivery gate is not precluded. *See Giant Eagle Mkts., Co.*, 652 A.2d at 1293 (upholding the finding of a seizure, despite numerous people accessing the grocery store). Additionally, there is no durational criteria for a seizure under § 206d(d). *Turner* [], 130 A[.3d] at 61 ("[n]either this Court, nor the Supreme Court of Pennsylvania has imposed evaluative criteria relating to the duration of an apparent seizure").

In **Wilkes-Barre Indep. Co.**[], the trial court's finding of a seizure was upheld when there was just a 15[-]minute delay. **Wilkes-Barre Indep[.] Co.**[], 314 A.2d [at] 253[] ([] picketers blocked two of eight entrances from 7:45 a.m. to 8:00 a.m. and from 6:30 p.m. to 7:00 p.m.). Although the video evidence shows only the final minutes of the picketers' block[ade], it was approximately 15 minutes before the delivery vehicles could exit the [] facility. Even without a duration [criterion], 15 minutes is sufficient to find picketers seized the property. **Id.**

[Appellants'] conduct constitutes a seizure even with five (5) to nine (9) picketers blocking or attempting to prevent vehicular access to Wayne Street ([Publishers'] Exh. 2 at 3:19). The credible testimony revealed there were 15-20 individuals on each night of picketing at the [facility]. The issue is not how many bodies form the picket line, but if there is interference with the ingress and egress of a plaintiff's property. **Turner** [], 130 A.3d at 61; **Wilkes-Barre Indep. Co.**, 314 A.2d at 253 (five or six picketers in front of entrance constituted a seizure); **Giant Eagle Mkts. Co.**, 652 A.2d at 1290 (thirteen to fourteen picketers, but only three or four blocking entrance constituted a seizure). 15-20 picketers interfered with the egress of Post-Gazette vehicles from the [facility]. Since a seizure exists based upon [] clear evidence, jurisdiction exists to issue an injunctive relief.

Trial Court Opinion, 11/14/22, at 6-9 (some citations modified).

Our review confirms the trial court had reasonable grounds to support its finding of a seizure by Appellants. **Giant Eagle Mkts., Co.**, 652 A.2d at 1293. We note Appellants fail to point to, and we have not found, any caselaw that sets a specific length of time for finding a seizure. The video evidence with respect to the length of the blockages caused by picketing at the Butler facility on October 19, 22, and 26, 2022, is at equivocal best, because of the way the videos were recorded and edited. **See** Publishers' Exhs. 2-4. There was little testimony with respect to the lengths of the blockages.

Robert M. Weber, Director of Operations for the Post-Gazette, was asked by Appellants' counsel if the blockages only lasted between 30-60 seconds for each truck/van. N.T., 10/31/22, at 44. Mr. Weber disputed that figure, explaining that the vehicles were "ultimately" allowed to depart.[6] *Id.* Ms. Schuey never put a time length on the blockages, testifying the gate area was "temporarily [blocked] for a short time. [The picketers] eventually let the truck go through." *Id.* at 59-60.

One of **Appellants' witnesses**, Mailers' Local 22 Union President John Clark, who was present during the picketing all there nights, testified regarding the length of the blockages and the intent of the picketers. *Id.* at 104-05, 109. Mr. Clark confirmed the picketers deliberately picketed in front of the gate. *Id.* at 109. Mr. Clark acknowledged that on October 19, 2022, the picketers blocked the gate for approximately 15 minutes, and blocked the gate for shorter, unspecified periods of time on the other two nights. *Id.* at 106-07, 109, 111. Mr. Clark also admitted that, prior to the picketers being pepper sprayed, the picketers had been pushing and hitting the first van as it tried to leave the facility. *Id.* at 111. He further testified that, after the spraying incident, union members committed property damage, including breaking glass. *Id.* at 108, 111-13. According to Mr. Clark, Joe Baker, a

---

[6] Mr. Weber testified, however, that blockages at the Clinton facility were extensive, lasting 45 minutes, and disruptive to the point that he was unable to depart the facility by normal means and had to drive over a lawn to get out of the facility. N.T., 10/31/22, at 33-35.

union vice president, threw a sign at one of the vans. CITE. *Id.* at 108, 111-12. Mr. Clark's testimony regarding the intent to block the gates is supported by the audio heard on the videos. *See* Publishers' Exhs. 2-4.

Moreover, even in the absence of a seizure, an injunction can be issued under Section 206d if there is damage to property. *See* 43 P.S. § 206d. Here, the record reflects that picketers damaged the vans attempting to leave the facility by banging on them, broke mirrors, windows, threw projectiles at the vans, and otherwise caused damage to them. N.T., 10/31/22, at 45, 90-91, 103, 107-12.[7] These actions took place prior to the spraying incident. *See id.*

Thus, because the trial court's factual findings are supported by competent evidence, we have no basis to disturb them. *Liberty Place Retail Assoc.*, 102 A.3d at 505-06. We further discern no error in the court's legal conclusion. Appellants' first issue does not merit relief. *See id.*

In their second issue, Appellants challenge the issuance of both the preliminary injunction and the permanent injunction, claiming the trial court failed to comply with the procedural requirements of the LAIA. Appellant's Brief at 28-38. Appellants first argue that the trial court divested itself of jurisdiction and committed an error of law by issuing the preliminary injunction

_____

[7] Again, the testimony regarding property damage and the picketer's intent to cause property damage is supported by testimony of the use of nail boards at the Clinton facility and punctured tires at the McKees Rocks facility. N.T., 10/31/22, at 38, 49, 111-12, 118-19; *see also* Publishers' Exh. 1.

*ex parte*. ***Id.*** at 29-32. Appellants next complain the trial court erred by issuing the permanent injunction without first making findings of fact. ***Id.*** at 32-34. Appellants next assert there is no competent evidence to support the trial court's factual findings pursuant to 43 P.S. § 206i. ***Id.*** at 34-38. Lastly, Appellants argue the trial court failed to include the mandatory language required by 43 P.S. § 206n in its final injunction. ***Id.*** at 38.

With respect to Appellants' claim of trial court error by its issuance of the preliminary injunction, we note again "a preliminary injunction is superseded by a decision on the merits[] and terminates upon the issuance of a permanent injunction." ***Den–Tal–Ez, Inc. v. Siemens Cap. Corp.***, 566 A.2d 1214, 1217 n.1 (Pa. Super. 1989) (*en banc*). The preliminary injunction at issue in this case terminated upon the trial court's issuance of the permanent injunction. ***See PA Energy Vision, LLC***, 120 A.3d at 1012. Appellant's challenge to the issuance of the preliminary injunction is therefore moot. ***Id.***

Appellants next assert the trial court violated 43 P.S. § 206i by failing to make "requisite findings of fact" before issuing its permanent injunction. Appellants' Brief at 31-32. Section 206i provides in pertinent part:

**Basis for labor injunctions**

No court of this Commonwealth shall issue any … permanent injunction in any case involving or growing out of a labor dispute, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in

opposition thereto, if offered, and **except after findings of fact by the court**[.]

43 P.S. § 206i (emphasis added).

In **Turner**, this Court distinguished between injunctions issued pursuant to 43 P.S. § 206d and those issued pursuant to 43 P.S. § 206i. **Turner**, 130 A.3d at 64-66. We concluded that where a trial court issues an injunction pursuant to § 206d, the provisions of § 206i are inapplicable; therefore, the trial court was **not required** to "present factual finding[s] as a prerequisite to issuing a **preliminary** injunction." **Id.** at 66 (emphasis added); **see also id.** at 64-66. While **Turner** involved the issuance of a preliminary injunction, its reasoning is equally applicable to the issuance of a final injunction. The provisions of § 206i are inapplicable where, as here, the trial court issued its injunction pursuant to § 206d. In accordance with **Turner**, we conclude the trial court did not err by issuing factual findings as part of its memorandum written after issuance of the permanent injunction. **Id.** at 66.

Appellants also argue, "the record does not contain competent evidence to support the [trial court's] factual findings under 43 P.S. § 206i." Appellants' Brief at 34; **see also id.** at 34-38. Again, the trial court issued the permanent injunction in this case pursuant to 43 P.S. § 206d, and its issuance is

supported by competent evidence. The provisions of 43 P.S. § 206i are inapplicable.[8] ***See Turner***, 130 A.3d at 64-66.

Lastly, Appellants claim the trial court erred in not including the following language in its permanent injunction:

> That complainant and/or the employer and their or either of their agents or employes shall be enjoined from any and all acts or threats of violence, intimidation, coercion, molestation, libel or slander against the respondents or organizations engaged in the labor dispute.

Appellants' Brief at 48 (quoting 43 P.S. § 206n).

However, Section 206d expressly provides that "this act shall not apply in any case" where a trial court has made the requisite finding that a seizure has occurred. 43 P.S. § 206d; ***see also Turner***, 130 A.3d at 64-66. Appellants fail to provide support for their contention that injunctions issued

---

[8] In its opinion, the trial court specifically found the facts in the instant matter met the requirements § 206i. As discussed in ***Turner***, this was error, as those requirements do not apply to injunctions issued under § 206d. ***Turner***, 130 A.3d at 64-66. Instead, the trial court should have applied the traditional rules of equity applicable to issuing a permanent injunction. ***Id.*** at 66. The traditional rules state: "To be entitled to a permanent injunction, a party must establish a clear right to relief, and must have no adequate remedy at law, *i.e.*, damages will not compensate for the injury." ***Liberty Place Retail Assoc.***, 102 A.3d at 505-06. "Unlike a preliminary injunction, a permanent injunction does not require proof of immediate irreparable harm." ***Id.*** As our discussion above shows, Publishers easily met this standard. ***See Commonwealth v. Elliott***, 249 A.3d 1190, 1193 n.3 (Pa. Super. 2021) ("It is well-settled that this Court may affirm the decision of the [trial c]ourt if it is correct on any basis.") (citations and internal quotation marks omitted), ***appeal denied***, 263 A.3d 241 (Pa. 2021). ***See also*** Trial Court Opinion, 11/14/22, at 9-11.

pursuant to Section 206d must include Section 206n's prescribed language. Appellants' second issue does not merit relief.

In their third issue, Appellants contend the trial court erred in issuing the permanent injunction, "because [Publishers] violated their legal obligations and failed to make every effort to settle the labor dispute." Appellant's Brief at 39-40. They rely on 43 P.S. § 206k, which provides:

> No … permanent injunctive relief shall be granted to any complainant in a case involving or growing out of a labor dispute who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute, either by negotiation, or with the aid of any available governmental machinery of mediation or voluntary arbitration, or has violated the public policy as declared in section [206b].

43 P.S. § 206k (footnote omitted).

Again, we remind Appellants that the trial court issued its injunction pursuant to Section 206d, not Section 206i. Appellants provide no legal support for their claim that Section 206k applies in the instant matter. Further, as discussed above, the requirements of the LAIA do not apply to injunctions issued pursuant to Section 206d. 43 P.S. § 206d; **Turner**, 130 A.3d at 64-66. Appellants' third issue does not merit relief.

In their fourth issue, Appellants argue the trial court improperly prohibited "Appellants from picketing and patrolling on a public street, public sidewalk, and other places they may lawfully be in[.]" Appellants' Brief at 42; **see id.** at 42-46. Appellants contend this prohibition violates their rights

under the First Amendment to the United States Constitution and Article 1, Section 7 of the Pennsylvania Constitution.[9] *Id.* at 45. We agree.

The United States Supreme Court has directed, "an order issued in the area of First Amendment rights **must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order**." *Turner*, 130 A.3d at 69 (Pa. Super. 2015) (emphasis added) (citing *Carroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968)). Therefore, an injunction that restrains free speech "must be tailored as precisely as possible to the exact needs of the case." *Id.*; *see also Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 559 (1976) ("[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights"); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973) (a prior restraint should not "swee[p]" any "more broadly than necessary").

Here, the trial court imposed strict limits on the number of picketers, and prohibited any picketing at the Rear Fenced Gate, on West Wayne Street itself, and on the public sidewalk on the south side of West Wayne Street. Permanent Injunction, 11/1/22, at 2 (unnumbered). While the trial court did

---

[9] Appellants also argue this violated 43 P.S. §§ 206f(e) and 206i(d). Again, these sections do not apply to an injunction issued pursuant to 43 P.S. § 206d. *Turner*, 130 A.3d at 67 (holding Sections 206f and 206i do not apply in cases where the trial court issued an injunction pursuant to Section 206d).

not address Appellants' federal and state constitutional claims in its

memorandum, it did explain:

> Here, the picketers are enjoined from entering Wayne Street for their safety, the safety of the newspaper distribution drivers, and the safety of the many residents [living] immediately across Wayne Street from the [facility's] sole delivery gate. The picketers are permitted access to the sidewalk along [] each side of the delivery gate entrance opposite the sidewalk fronting the residences. The injunction has no signage prohibitions. The ten (10) person limitation on the number of picketers, allowing for five (5) individuals on each side of the delivery gate, when weighed against public safety concerns and the residents living directly across Wayne Street to quietly enjoy their properties. Stationing the picketers 25 feet[10] from the [facility's] delivery gate allows [Publishers] unhindered access of its [] facility, while also recognizing and respecting [Appellants'] constitutionally protected right to freely assemble. …
>
> … The picketers are not enjoined from communicating information about the labor strike, persuading others to join by ending patronization, or to assemble and promote their interests. As stated above, the injunction honors [Appellants'] right to assemble and publicize [its] collective strike against the Post-Gazette.

Trial Court Opinion, 11/14/22, at 10-11 (footnote added).

We recognize "the propriety of an injunction depends upon the nature of the evidence concerning misconduct, the terms of the order, and the type of conduct being enjoined. Whether an injunction is appropriate in any given case is extremely fact[]sensitive." **Turner**, 130 A.3d at 69.

---

[10] This statement is incorrect. The permanent injunction does not merely restrict picketers picketing within 25 feet of the Rear Fenced Gate; rather, it broadly prohibits **all** picketing at the Rear Fenced Gate. Permanent Injunction, 11/1/22, at 2 (unnumbered).

As discussed above, the competent evidence supports the trial court's issuance of the permanent injunction. However, its dictates as to the location and number of picketers is overly broad, thereby violating Appellants' constitutional rights. In addition to restricting unlawful activities, the permanent injunction bars lawful picketing in many locations near the facility. Permanent Injunction, 11/1/22, at 2 (unnumbered). Both the video and testimonial evidence showed the **only** unlawful activities occurring at the facility took place in the area in, around, and immediately in front of the Rear Fenced Gate. **See** N.T., 10/31/22, at 1-127. There was no testimony or video evidence that the late-night protesting interfered with the ability of passing motorists to use West Wayne Street, or that residents on West Wayne Street had trouble accessing their residences or were disturbed by the picketing activity. **See id.**

In **Turner**, we approved the entry of an injunction that prohibited picketing within 25 feet of the "construction gate", the location of all unlawful activity. **Turner**, 130 A.3d at 70. However, we concluded the trial court improperly limited the number of picketers permitted. **Id.** In so doing, we reiterated "an order restricting first amendment freedoms **must be** couched in terms that achieve a **pinpoint objective** and are tailored to the needs of the case." **Id.** (emphases added).

Our Court further has disapproved injunctive relief based on mere inconvenience to pedestrians. **See**, **e.g.**, **Frankel-Warwick Ltd. P'ship. v.**

***Local 274, Hotel, Bartenders and Rest. Emp. Union AFL-CIO***, 482 A.2d 1073, 1076 (Pa. Super. 1984). In ***Frankel-Warwick***, this Court reversed the grant of a preliminary injunction; we stated that, "[w]hile the presence of the pickets may have made travel on the sidewalk somewhat difficult[,]" this did not constitute grounds for finding a seizure and affording injunctive relief. ***Id.*** at 1076. ***See also Liberty Place Retail Assocs.***, 102 A.3d at 506-10 (affirming the trial court's **denial** of a permanent injunction barring a religious group from demonstrating on a public sidewalk, where their activities forced members of the public into a setback space owned by shopping mall); ***Tenth Presbyterian Church v. Snyder***, 285 A.3d 917 (Pa. Super. 2022) (unpublished memorandum at *4-5) (holding an injunction that limited a protestor from "appearing within 1,000 feet of any Church owned and/or occupied Property[]" was overly broad).

In this case, the trial court's stated objective was to stop violent behavior and preclude picketers from blocking ingress to and egress from the Rear Fenced Gate. ***See*** Trial Court Opinion, 11/10/22, at 7. The restrictions placed by the trial court went far beyond this and would largely prevent Appellants from continuing to "communicate with the public and potential sympathizers." ***Turner***, 130 A.3d at 70. The trial court's solution was not the "narrowest means of accomplishing the court's objective. To the contrary, [the permanent injunction] is overly restrictive." ***Id.*** We are therefore constrained to reverse that portion of the trial court's permanent injunction

and remand for modification of the permanent injunction. The modified permanent injunction must be sufficient to stop violent behavior and deter Appellants from blocking the Rear Fenced Gate, while not infringing upon Appellants' First Amendment right to peacefully picket in public spaces.

In their fifth issue, Appellants argue the trial court erred in failing to award them reasonable attorneys' fees and costs. Appellants' Brief at 46-57. 43 P.S. § 206q provides:

> Upon **denial** by the court of any injunctive relief sought in an action involving or growing out of a labor dispute, the court shall order the complainant to pay reasonable costs and expenses of defending the suit and a reasonable counsel fee.

43 P.S. 206q (emphasis added). Here, the trial court **granted** a permanent injunction; thus, Appellants are not entitled to counsel fees, costs, and expenses. **See Turner**, 130 A.3d at 68 (citing cases holding that where the trial court issued an injunction pursuant to Section 206d, union was not entitled to recover counsel fees, costs, and expense). Appellants' fifth issue does not merit relief.

In their final issue, Appellants argue the permanent injunction should be dissolved, because the trial court failed to comply with Pa.R.C.P. 1531(f)(1) and (f)(3). **See** Appellants' Brief at 47-50. Appellants contend the trial court, in violation of the Rules, filed the permanent injunction twenty-seven hours after the evidentiary hearing and filed its written memorandum thirteen days after the permanent injunction's issuance. **Id.** at 49.

Rule 1531 provides in pertinent part:

(f)(1) When a preliminary or special injunction involving freedom of expression is issued, either without notice or after notice and hearing, the court shall hold a final hearing within three days after demand by the defendant. **A final order shall be filed in the office of the prothonotary within twenty-four hours after the close of the hearing.** If the final hearing is not held within the three-day period, or if the final order is not filed within twenty-four hours after the close of the hearing, **the injunction shall be deemed dissolved.**

\*\*\*

(3) The trial judge **shall file a written memorandum** supporting the final order **within five days after it is filed**.

Pa.R.C.P. 1531(f)(1) and (3) (emphases added).

In ***School District of Pittsburgh v. Pittsburgh Feder'n of Tchrs., Loc. 400, Am. Feder'n of Tchrs., AFL−CIO***, 406 A.2d 324 (Pa. 1979), our Supreme Court explained Rule 1531(f)(1) as follows:

This rule came into being following the decision of the United States Supreme Court in ***Freedman v. Maryland***, 380 U.S. 51 [] (1965) and this Court's decision in ***Duggan v. 807 Liberty Ave., Inc.***, [] 288 A.2d 750 ([Pa.] 1972). Those holdings require state procedures insuring a prompt and final judicial determination when injunctions are sought involving freedom of expression.

***Id.*** at 326. The purpose of Rule 1531(f)(1) is to ensure that injunction proceedings are conducted in a manner that exhibits the "necessary sensitivity to freedom of expression." ***Duggan***, 288 A.2d at 754.

Appellants maintain the trial court's delay in issuing its written memorandum in support of the permanent injunction, in violation of Pa.R.C.P.

1531(f)(3), requires dissolution of the permanent injunction.[11]  Appellants' Brief at 49-50.  However, unlike Rule 1531(f)(1), the text of Rule 1531(f)(3) does not include language requiring dissolution for noncompliance or include any penalty language whatsoever.  Appellants do not cite cases supporting their interpretation of Rule 1531(f)(3).  While it appears the trial court violated Rule 1531(f)(3), we decline to create a remedy not contemplated by the text of the rule.  Appellants' sixth issue does not merit relief.

For the reasons discussed above, we affirm the issuance of the permanent injunction, but reverse and remand this case for the trial court to modify the injunction consistent with this opinion.

Order affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.  Jurisdiction relinquished.

Judge Pellegrini joins the opinion.

Judge McLaughlin files a dissenting opinion.

---

[11] Our Supreme Court previously rejected a claim that a violation of Rule 1531(f) requires dissolution of both the preliminary and permanent injunctions.  *See Ranck v. Bonal Enterprises, Inc.*, 359 A.2d 748, 751 (Pa. 1976) ("Rule 1531(f) provides only for the dissolution of the preliminary injunction.").  Thus, we will not further address Appellants' claim.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>11/6/2023</u>